UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GREG V. JOHNSON,

                Plaintiff,

      - against -

WALDEN UNIVERSITY, INC.,

                Defendant.

NO. 3:08 CV 0045 (JCH)

MAY 15, 2009

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Walden University, Inc. ("Walden") respectfully submits this memorandum of law in support of its motion for summary judgment. Summary judgment in favor of Walden is appropriate on all six counts of Plaintiff's Complaint as the claims are time-barred and legally insufficient.

## PRELIMINARY STATEMENT

Walden University is an accredited online university offering graduate degrees in a variety of fields, including psychology. In 1997, Plaintiff, then in active military service stationed in Japan, applied and was accepted as a student in Walden's professional psychology program to pursue a doctorate in psychology. Plaintiff started his Walden studies in December 1997. At that time, Plaintiff chose to specialize in sport psychology, one of seven psychology specializations then available. Sport psychology was listed in the psychology student handbook provided to Plaintiff as a non-licensure

specialization intended to prepare graduates for careers in academia, health care, athletics, or business. By contrast, certain other Walden psychology specializations, those in which Plaintiff opted not to enroll, were expressly described as licensure-oriented specializations designed to prepare graduates for licensure as a psychologist. In July 1999, when the sport psychology specialization was phased out, Plaintiff switched his specialization to health psychology, which was also conspicuously described as a non-licensure specialization in the psychology student handbook and in other descriptive university materials. Indeed, Walden prominently and unambiguously listed health psychology as a non-licensure specialization in university catalogs at all times thereafter.

With Plaintiff having selected health psychology as his specialization, Walden endeavored to educate Plaintiff in his chosen specialization over the ensuing seven and a half years. In January 2000, Plaintiff moved from Japan to Georgia, and subsequently relocated to Connecticut in April 2000. From 2001 to 2003, unbeknownst to Walden, Plaintiff was simultaneously obtaining a master of business administration degree from another university. In November 2006, after Plaintiff had completed and defended his doctoral dissertation, Walden awarded Plaintiff a Ph.D. in psychology, with a specialization in health psychology.

Over a year later, in January 2008, Plaintiff filed this action alleging that Walden had failed to provide him with an education that would permit him to obtain a state psychology license in Connecticut. Plaintiff put forward this state licensure claim for the first time in 2008, despite having been enrolled from initial matriculation in 1997 through graduation in 2006 in psychology programs that were by their very design not

intended to prepare graduates for licensure.  Plaintiff has alleged six different counts in

the Complaint: (i) fraudulent misrepresentation, (ii) negligent misrepresentation, (iii)

violation of the Connecticut Unfair Trade Practices Act, (iv) breach of implied contract,

(v) promissory estoppel, and (vi) breach of the implied covenant of good faith and fair

dealing.

   This legal action is entirely based on alleged events occurring between

1997 and 2000.  At a minimum, all of these alleged events transpired more than seven

years before the Complaint was filed in 2008.  Moreover, none of these legal claims are

supported by the actual evidence in this case and there are no genuine issues as to any

material fact.  Accordingly, Walden now moves for summary judgment on all six counts

as each count is barred under the applicable statute of limitation and, even if not time-

barred, each count is insufficient as a matter of law.


## STATEMENT OF FACTS

   Walden is an accredited institution of higher education founded in 1970.

Walden has a current enrollment of over 30,000 students working towards bachelor's,

master's, or doctoral degrees in fields such as education, psychology, public health,

business administration, human services, public policy, nursing, and engineering.

Walden offers its students a distance learning environment in which many of its programs

are taught either completely or partially online.  (See Affidavit of Denise M. DeZolt,

Ph.D. ("DeZolt Aff."), ¶ 2).  Walden is accredited by the Higher Learning Commission

and is a member of the North Central Association.  The Higher Learning Commission is

one of six regional accrediting bodies recognized by the United States Department of Education. (DeZolt Aff., ¶ 3). Walden maintains its academic offices in Minneapolis, Minnesota and its business offices in Baltimore, Maryland. (DeZolt Aff., ¶ 4).[1]

During 1997, Plaintiff Greg Johnson ("Plaintiff") applied to the Walden Professional Psychology Program to pursue a doctorate degree in psychology. (See Transcript of Deposition of Greg Johnson ("Pl. Depo.") which is attached hereto in its entirety as Exhibit A, at P. 18 to P. 25).[2] At the time of his application and eventual enrollment, Plaintiff was in the United States armed forces stationed in Okinawa, Japan. (Id. at P. 13 to P. 20). Plaintiff was subsequently accepted by Walden into its professional psychology program. (DeZolt Aff., ¶ 5). During this application and acceptance process, on or about August 18, 1997, Plaintiff submitted a resume to Walden that stated that he was looking to become an "engineer research psychologist." (Pl. Depo. at P. 21, L. 5 to P. 22, L.19). During the matriculation process, Plaintiff officially selected Sport Psychology as his area of psychology specialization. (DeZolt Aff., ¶ 5).

At or around this time, Plaintiff prepared a professional development plan which stated his career goals. (Pl. Depo. at P. 26, L. 17 to P. 33, L. 10; and Exhibit B hereto). Plaintiff's professional development plan did not state that he intended to be a licensed psychologist with his own clinical practice. (Ex. B). Plaintiff has testified at his

---

[1] As of April 1, 2009, Walden University, Inc. became Walden University, LLC, as Walden converted from a corporation to a limited liability company under Florida law. (DeZolt Aff., ¶ 4).

[2] As directed by this Court's chambers practices, in lieu of an attorney affidavit, relevant deposition transcripts and deposition exhibits are attached as exhibits to this memorandum.

deposition that "As life continues to go on, pretty much long-range goals do change from time to time." (Pl. Depo. at P. 33, L. 4-7). However, Plaintiff testified at his deposition that he does not recall ever submitting another document to Walden updating his long range goals as stated in his professional development plan in 1997. (Pl. Depo. at P. 32, L.16 to P. 33, L.10).

At or around the time of his enrollment, Plaintiff received a "Walden University Psychology Student Handbook 1997-98" (the "Handbook"). (Pl. Depo at P. 33, L.15 to P. 35, L.14; and Exhibit C hereto). The Handbook stated as follows in Section 4.1: "The Professional Psychology Program (PPP) offers two categories of doctoral specialization: (1) to prepare graduates to apply to state psychology boards for license to practice psychology (clinical, counseling, and school psychology), and (2) to prepare graduates to teach psychology, work in business/industry, seek positions in health care settings, or work as consultants." The Handbook also listed in Section 4.3 "Licensure-Oriented Specializations" as "Clinical, counseling, and school psychology are specializations designed to prepare graduates for licensure as a psychologist." In Section 4.4, the Handbook listed "Nonlicensure-Oriented Specializations" as "Academic, health, organizational, and sport psychology are specializations designed to prepare graduates for positions in academic settings, health care environments, athletic settings, and business/industry." Plaintiff admitted at his deposition that he received and read portions of the Handbook at the time, and specifically, that he read Sections 4.3 and 4.4. (Pl. Depo. at P. 35, L.13-14; P. 43, L. 13-16; P. 45, L.4-6; Ex. C).

The two broad categories of psychology specializations offered by Walden – licensure-oriented specializations and nonlicensure-oriented specializations – have substantive and significant differences.  The academic training requirements established by Walden for students in licensure-oriented specializations are materially different than those mandated for nonlicensure-oriented specializations.  (DeZolt Aff., ¶ 9).

On September 1, 1998, Dr. John Anderson was assigned as Plaintiff's faculty mentor.  (DeZolt Aff., ¶ 7).  Dr. Anderson's affiliation with Walden ended during the year 2000, and Plaintiff was then assigned a new faculty mentor.  (DeZolt Aff., ¶ 7). Plaintiff testified that he never spoke to any other mentor or advisor about his career goals or about psychology licensure after Dr. Anderson left Walden.  (Pl. Depo. at P. 52, L. 24 to P. 53, L.1; P. 76, L. 2 to P. 77, L.14).

On July 14, 1999, Plaintiff officially changed his specialization from Sport Psychology to Health Psychology.  (DeZolt Aff., ¶ 6).  The Handbook in Plaintiff's possession listed Health Psychology as a "Nonlicensure" specialization.  (Ex. C).  Later that year, in an email dated December 2, 1999, Plaintiff advised the professor and students in his Walden psychopharmacology class that: "After I complete this program, I plan on going back to school and try to be an MD."  (See Email attached hereto as Exhibit D).  Plaintiff testified at his deposition that at that point in time becoming a medical doctor was his career goal.  (Pl. Depo. at P. 58, L. 17 to P. 59. L. 9).

By the end of the 1999 Winter Quarter, Plaintiff finished his required coursework.  Starting in the 2000 Spring Quarter, Plaintiff officially began work on his dissertation.  (See Plaintiff's Transcript attached as hereto as Exhibit E).  In or around

January 2000, Plaintiff retired from the military and relocated from Japan to the State of Georgia. Plaintiff subsequently moved to Connecticut in April 2000. (Pl. Depo. at P. 12, L. 25 to P. 13, L. 7; P. 65, L.18-19; P. 66, L.1-6). Plaintiff testified that prior to moving to Connecticut, he did not do any research on Connecticut's rules on licensing psychologists. (Id. at P. 66, L. 10 to P. 67, L.1).

While still enrolled as a Walden Ph.D. student, from approximately 2001 through 2003, Plaintiff was simultaneously enrolled in the MBA program of Rensselaer at Hartford, formerly known as The Hartford Graduate Center, which is affiliated with Rensselaer Polytechnic Institute. (Id. at P. 67, L. 8 to P. 70, L. 12; and Exhibits F and G hereto). Plaintiff testified that United Technologies Corporation, Pratt & Whitney Division ("UTC"), his employer, paid the entire tuition for his MBA degree. (Pl. Depo. at P. 106, L.22 to P. 107, L.6). Plaintiff has testified that he obtained the MBA degree in order to improve his career potential at UTC by becoming eligible for UTC's selective leadership development program, and with the further expectation that the MBA would lead to better opportunities at the company. (Id. at P. 70, L. 10 to P.71, L.12; P. 73, L. 21 to L. 25; P. 86, L. 7-14).

In 2006, Plaintiff completed his Walden dissertation, which was entitled: "Parents' Decision-Making Process Regarding Noninvasive Medical Treatment of Minor Traumatic Brain Injury Patients in the ER." (Ex. E, Transcript). On November 26, 2006, Plaintiff was awarded a doctorate degree in psychology with a specialization in health psychology. (Id.) Plaintiff testified that he was adequately trained as a health psychologist by Walden. (Pl. Depo. at P. 63, L.20 to P. 64, L.4).

-7-

Plaintiff testified at his deposition that the United States Marine Corps paid approximately seventy five percent of his Walden tuition from 1997 to 1999, subject to certain limitations.  (Pl. Depo. at P. 88, L.9 to P. 89, L.14; P. 91, L. 22-25).  Plaintiff further testified that UTC, which was his employer in Connecticut starting in April 2000 all the way through the time of his Walden graduation in 2006, paid one hundred percent of his Walden tuition expenses during that entire period of time.  (Pl. Depo. at P. 98, L.14 to P. 99, L. 9; P. 101, L. 7-17).

In the spring of 2007, months after graduating from Walden, Plaintiff took another graduate course in business management at Rensselaer at Hartford.  Plaintiff testified he took the course to sharpen his tools to become a more effective leader at UTC.  (Pl. Depo. at P. 72, L. 12 to P. 73, L.20; and Ex. G).  Plaintiff testified that he did not consult the Connecticut statutes or regulations on the licensing of psychologists at any time before 2007.  (Pl. Depo. at P. 65, L. 20-25).

For every academic year between 1998 and 2006, the official annual Walden University Catalog clearly and prominently listed sport and health psychology as non-licensure specializations. (DeZolt Aff., ¶ 8).  Many graduates of Walden's professional psychology program, as well as advanced degree graduates in psychology from other academic institutions, work as non-licensed psychologists in government, business, health care, academia, research organizations, and in a variety of other settings. (DeZolt Aff., ¶ 10).

Plaintiff filed this legal action against Walden in January 2008.

- 8 -

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, to defeat summary judgment the nonmoving party must come forward with evidence that would be sufficient to support a verdict in its favor. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Id. A party opposing summary judgment bears the burden of going beyond the pleadings and "designat[ing] specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

## ARGUMENT

### I.   PLAINTIFF'S FRAUDULENT MISREPRESENTATION CLAIM IS UNTIMELY AND INSUFFICIENT AS A MATTER OF LAW

#### A.   Plaintiff's Fraudulent Misrepresentation Claim is Time-Barred

Under Connecticut law, a three-year statute of limitations applies to tort actions based on misrepresentation.  Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of").[3]  "Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs."  Collum v. Chapin, 40 Conn. App. 449, 451 (1996) (internal quotations omitted).  When the court conducts an analysis under Section 52-577, "the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed."  Id. (internal quotations omitted).  "The three-year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury."  Id.

---

[3] A federal court sitting in diversity applies the substantive law of the forum state including its choice-of-law rules.  Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).  "Under Connecticut law, statutes of limitations are considered procedural and thus Connecticut's own statute of limitations will usually govern claims asserted in federal diversity cases in Connecticut."  Slekis v. AMTRAK, 56 F. Supp. 2d 202, 204 (D. Conn. 1999).  See also Chappetta v. Soto, 581 F. Supp. 2d 292, 293 (D. Conn. 2008) (applying Connecticut's statute of limitations in diversity case).

Here, the Complaint, which is materially devoid of any specificity or clarity, appears to allege that Plaintiff was told by a particular faculty mentor that he would be qualified to start his own sport psychology clinic without a license after graduating.   Significantly, this is the only alleged misrepresentation contained in the Complaint.  While no time period is identified in the Complaint, Plaintiff confirmed in his deposition that this verbal representation must have been made before the end of 2000 as the faculty mentor, Dr. John Anderson, left Walden in 2000. (Pl. Depo at P. 57, L. 16 to P. 58, L.4; DeZolt Aff., ¶ 7).   Furthermore, Plaintiff also testified that he did not communicate with any other representative of Walden about licensing or professional practice issues any time after his alleged communications with Dr. Anderson. (Pl. Depo. at P. 52, L. 24 to P. 53, L.1; P. 76, L. 2 to P. 77, L.14).  Accordingly, the alleged verbal misrepresentation was made in 2000 or earlier, well beyond the applicable statute of limitations.  Given that the alleged wrongful conduct occurred more than three years before the Complaint was filed in January 2008, Count One is barred by the statute of limitations. [4]

---

[4] The basic legislative purpose of statutes of limitation, to promote finality, would be fulfilled by dismissing these claims.  See Wynn v. Metropolitan Property & Cas. Ins. Co., 30 Conn. App. 803, 808-09 (1993), aff'd, 228 Conn. 436 (1994) ("A statute of limitation or of repose is designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." See also Beebe v. East Haddam, 48 Conn. App. 60, 67 (1998).

B.    Plaintiff's Fraudulent Misrepresentation Claim Fails as a Matter of Law

Even assuming Count One was not time-barred, the fraudulent misrepresentation claim fails as a matter of law.  In Connecticut, the essential elements of an action for fraudulent misrepresentation are (i) a false representation was made as a statement of fact; (ii) it was untrue and known to be untrue by the party making it; (iii) it was made to induce the other party to act upon it; and (iv) the other party acted upon the false representation, to his injury.  Weisman v. Kaspar, 233 Conn. 531, 539 (1995).[5] Claims for fraudulent misrepresentation must be proved by "clear, precise and unequivocal evidence."  Tyers v. Coma, 214 Conn. 8, 11 (1990).  Here, there is no evidence that any alleged verbal representation by Dr. Anderson was made as a statement of fact rather than as an opinion, or, furthermore, that such a representation was known to be untrue when Dr. Anderson made it.  By the time Dr. Anderson was assigned as Plaintiff's faculty mentor, Plaintiff had already been enrolled in Sport Psychology, a non-licensure specialization, for nearly a year.  Therefore, any such representation did not induce action by Plaintiff.  Plaintiff simply kept on the same track he had already been on from the beginning.  Accordingly, summary judgment is appropriate.

---

[5] With respect to substantive choice of law, the substantive law applicable to the legal claims alleged is not readily apparent.  Walden functions as principally an online institution and maintains its academic offices in Minnesota.  According to the Complaint, Plaintiff was living in Japan at the time of his enrollment in 1997, moved to Georgia in early 2000, and then moved to Connecticut in April 2000.  All the specific allegations of wrongdoing in the Complaint occurred prior to 2000.  Given these locations and dates, this case presents potentially complex choice of law issues.  Nevertheless, for purposes of this motion and for ease of analysis, Walden consents to the application of Connecticut substantive law.

II.    **PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM IS UNTIMELY AND INSUFFICIENT AS A MATTER OF LAW**

   A.    Plaintiff's Negligent Misrepresentation Claim is Time-Barred

             Plaintiff's claim for negligent misrepresentation is also time-barred under

the three-year tort statute of limitation.  See Conn. Gen. Stat. § 52-577 ("No action

founded upon a tort shall be brought but within three years from the date of the act or

omission complained of").[6]  As stated above, the only alleged misrepresentations that

Plaintiff has identified must have occurred in 2000 or earlier.  As Section 52-577 is an

occurrence statute, this claim is clearly time-barred.


   B.    Plaintiff's Negligent Misrepresentation Claim Fails as a Matter of Law

             Even assuming the claim were not time-barred, the claim is insufficient as

a matter of law.  "An action for negligent misrepresentation requires a plaintiff to prove

that (1) the defendant made a misrepresentation and (2) the plaintiff reasonably relied

upon that misrepresentation."  Giametti v. Inspections, Inc., 76 Conn. App. 352, 363-64

(2003).  As described above, Plaintiff was on notice from the very beginning that he was

in a program that was not designed to prepare graduates for licensure.  He admitted at his

---

[6] To the extent Count Two might be construed as a claim for injury to property, the claim
is time-barred under Conn. Gen. Stat. § 52-584 ("No action to recover damages for
injury… to real or personal property, caused by negligence… shall be brought but within
two years from the date when the injury is sustained or discovered or in the exercise of
reasonable care should have been discovered, and except that no such action may be
brought more than three years from the date of the act or omission complained of…").

deposition that he received a 1997-1998 psychology student handbook that made that point explicitly. While there is no evidence that Walden made any misrepresentations, almost more importantly, there is no evidence supporting that Plaintiff reasonably relied on any misrepresentation. The evidence supports the opposite conclusion, which is that Plaintiff never relied on any such representation at all. In 1999, after these alleged misrepresentations took place, Plaintiff was independently informing faculty and classmates that he planned to become a medical doctor after graduation. (Ex. D). Thereafter, Plaintiff spent years pursuing an MBA degree in order to advance his long-term potential in the corporate world. In summary, Count Two fails as a matter of law.

## III.   PLAINTIFF'S CUTPA CLAIM IS UNTIMELY AND INSUFFICIENT AS A MATTER OF LAW

### A.   Plaintiff's CUTPA Claim is Time-Barred

By statute, a claim under the Connecticut Unfair Trade Practices Act ("CUTPA") may not be brought more than three years after the occurrence of a violation of CUTPA. See Conn. Gen. Stat. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter"); Willow Springs Condominium Ass'n, Inc. v. Seventh BRT Dev. Corp., 245 Conn. 1, 46 (1998). Section 42-110g(f) is explicitly an occurrence statute analogous to Section 52-577. See Fischera v. Mine Hill Corp., 207 Conn. 204, 210-214 (1988). Here, the alleged unfair and deceptive acts and practices in trade or commerce -- soliciting Plaintiff as a student and placing him in a program not designed for licensure -- occurred in 1997 or 1999, more than eight years before the Complaint was filed. Accordingly, Count Three is

barred by the statute of limitations.  See Timmons v. City of Hartford, 283 F. Supp. 2d

712, 719 (D. Conn. 2003) ("A CUTPA violation occurs when the misrepresentation is

made and the statute of limitations commences running the moment the act or omission

complained of occurs").


B.      Plaintiff's CUTPA Claim Fails as a Matter of Law

Even assuming the claim were not time-barred, the CUTPA claim is

insufficient as a matter of law.  An action under CUTPA requires: (i) that the defendant

committed an unfair or deceptive act or practice; (ii) that the act complained of was

performed in the conduct of trade or commerce; (iii) that the prohibited act was the

proximate cause of harm to the plaintiff; and (iv) that the plaintiff suffers an ascertainable

loss of money or property.  See Conn. Gen. Stat. § 42-110g.  To establish an unfair trade

practice, Plaintiff must establish that Walden's conduct: (i) offended public policy as has

been established by statutes, common law, or other concepts of unfairness; (ii) it was

immoral, unethical, oppressive or unscrupulous; or (iii) it caused substantial injury to

consumers, competitors or other business persons.  See Prishwalko v. Bob Thomas Ford,

Inc., 33 Conn. App. 575, 585-86 (1994).

The incontrovertible evidence demonstrates that Walden did nothing that

would constitute an unfair trade practice.  Walden conspicuously and continuously

described the sport and health psychology specializations as not being intended for

students seeking state licensure as psychologists.  (Ex. C, Sections 4.1, 4.3, and 4.4;

DeZolt Aff., ¶ 8).  There was absolutely no attempt to deceive or mislead whatsoever.

Plaintiff has testified that Walden adequately trained him as a health psychologist, the exact non-licensure specialization Plaintiff had selected.

In addition, CUTPA should not apply to this case. By its terms, CUTPA seeks to proscribe unfair or deceptive acts or practices in trade or commerce *in Connecticut*. See Conn. Gen. Stat. § 42-110(a)(4) (defining "trade" and "commerce" to mean: "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value *in this state*.") (Emphasis added). No Connecticut appellate court appears to have addressed the geographical reach of CUTPA. See generally Robert M. Langer, John T. Morgan & David L. Belt, *Unfair Trade Practices*, § 3.7 at 95-105 (Connecticut Practice Series, Volume 12) (2003). Judge Arterton recently analyzed the geographical reach of CUTPA in Metropolitan Enter. Corp. v. United Techs. Int'l Corp., No. 3:03CV1685, 2004 WL 1497545, *4-7 (D. Conn. June 28, 2004) (copy attached hereto as Exhibit H), but the facts in that case involved specific underlying allegations taking place directly in Connecticut, unlike the situation presented here.

In this case, given that Plaintiff lived in Japan: (i) when he enrolled in Walden, (ii) when he was allegedly advised by Dr. Anderson regarding licensure issues, (iii) when he selected the sport psychology specialization, and (iv) when he selected the health psychology specialization, there is absolutely no factual nexus between Connecticut and any of the alleged improper actions by Walden that could conceivably constitute trade or commerce. Plaintiff moved to Connecticut a full year after changing

- 16 -

to the health psychology specialization.  The fact that Plaintiff was a Connecticut resident during the years he finished his degree is insufficient to make CUTPA applicable to alleged actions that predated his residency in this state.  Summary judgment should be granted for Walden on Count Three.

## IV.    PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM IS UNTIMELY AND FAILS AS A MATTER OF LAW

### A.    Plaintiff's Breach of Implied Contract Claim is Time-Barred

Count Four alleges the breach of an implied contract between Walden and Plaintiff which apparently provided that Plaintiff's psychology degree would be sufficient to obtain state licensure at the time he graduated.  This claim is time-barred under Conn. Gen. Stat. § 52-576, which provides that "[n]o action... on any contract in writing, shall be brought but within six years after the right of action accrues..." [7]

As to when a breach of contract action accrues, in <u>Tolbert v. Connecticut Gen. Life Ins. Co.</u>, 257 Conn. 118, 124-26 (2001) the Connecticut Supreme Court held:

> The law concerning when a breach of contract action accrues is well settled.  This court has stated that "in an action for breach of contract. . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted." Although the application of this rule may result in occasional hardship, "it is well established that *ignorance of the fact that*

---

[7] Alternatively, to the extent Count Four alleges a claim for breach of an oral contract, such a claim is also time-barred. <u>See</u> Conn. Gen. Stat. § 52-581 ("No action founded upon any express contract or agreement which is not reduced to writing, or which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues").

> *damage has been done does not prevent the running of the statute,* except where there is something tantamount to a fraudulent concealment of a cause of action. (Emphasis in original) (Internal citations omitted).

See also Kennedy v. Johns-Manville Sales Corp., 135 Conn. 176, 180 (1948) (fact that damage not manifest at time of breach did not prevent running of statute).

Here, the alleged breach of contract occurred in 1997 or 1999, which are the years Plaintiff enrolled in a psychology specialization program that was explicitly not designed to provide graduates with the ability to seek state licensure. Accordingly, those would have been the moments in time at which any alleged injury was inflicted. To the extent Plaintiff did not realize that he had been damaged until after graduating in 2006, Connecticut law dictates that any such ignorance does not toll the running of the statute of limitation. In fact, Plaintiff was well aware at the time in 1997 and 1999 that he had enrolled in a non-licensure program. Accordingly, there was no fraudulent concealment by Walden. The very Handbook produced by Plaintiff in this case, which Plaintiff testified that he had read at the time, clearly states that both Sport Psychology and Health Psychology were non-licensure specializations. (Ex. C). Over the ensuing years from 1998 to 2006, Walden repeatedly identified and described health psychology as a non-licensure specialization in its annual university catalogs. (DeZolt Aff., ¶ 8).

Therefore, because the alleged breach occurred more than six years before this action was filed in 2008, Count Four is barred by the statute of limitations.

B.    Plaintiff's Breach of Contract Claim Fails as a Matter of Law

Even assuming the breach of contract claim was not time-barred, the claim is still insufficient as a matter of law. Under Connecticut law, the elements of a breach of contract action are "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." Rosata v. Mascardo, 82 Conn. App. 396, 411 (2004). See also Timmons v. City of Hartford, 283 F. Supp. 2d 712, 718 (D. Conn. 2003) ("In order to state a breach of contract claim, the plaintiffs must allege (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages").

Connecticut courts have been extremely hesitant to recognize contractual claims arising out of educational services. See Gupta v. New Britain Gen. Hosp., 239 Conn. 574, 590 (1996); Faigel v. Fairfield Univ., 75 Conn. App. 37, 42 (2003). In Gupta, 239 Conn. at 591-93, the Connecticut Supreme Court held that a student in an educational program could potentially pursue a breach of contract claim by proving either (i) "the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field" or (ii) "the educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program." Neither situation is presented here.

As to the first Gupta category, Walden provided Plaintiff with an education consistent with the specialization he enrolled in, and at all times Walden described that specialization as not intended for students seeking licensure. Furthermore, health psychology graduates regularly work in non-licensed capacities in a variety of

organizations and settings. (DeZolt Aff., ¶ 10). As to the second Gupta category, Plaintiff has not identified any specific contractual promise which Walden failed to fulfill. See Faigel, 75 Conn. App. at 42-44 (affirming summary judgment for defendant university where plaintiff student failed to show that a specific contractual promise had been breached); Timmons, 283 F. Supp. 2d at 719 ("[i]n asserting a breach of contract claim, the complaint must allege the provisions of the contract upon which the claim is based").

Furthermore, given that Plaintiff cannot identify any writing that supports the existence of this alleged "contract," this contract violates Connecticut's statute of frauds given that the contract could not possibly have been performed in less than a year. See Conn. Gen. Stat. § 52-550(a) ("No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: …(5) upon any agreement that is not to be performed within one year from the making thereof"). See also Burkle v. Superflow Mfg. Co., 137 Conn. 488, 492-98 (1950).

In this case, the alleged implied oral agreement (that Walden would provide Plaintiff with a degree sufficient to obtain licensure upon graduating) is necessarily for a term greater than one year. Given the mandatory course and dissertation requirements for obtaining a doctoral degree in psychology at Walden, it was impossible that Plaintiff could have graduated within one year after enrollment. (Ex. E, Transcript; DeZolt Aff., ¶ 8 and Ex. A thereto). Accordingly, the Fourth Count must be dismissed by way of summary judgment.

## V.    PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM IS UNTIMELY AND FAILS AS A MATTER OF LAW

### A.    Plaintiff's Promissory Estoppel Claim is Time-Barred

Under Connecticut law, a promissory estoppel claim is subject to the same six-year statute of limitations as a breach of contract claim.  See Conn. Gen. Stat. § 52-576(a); Torringford Farms Ass'n, Inc. v. City of Torrington, 75 Conn. App. 570, 576-77 (2003) (affirming dismissal of promissory estoppel claim on summary judgment as time-barred under Section 52-576(a)), cert. denied 263 Conn. 924 (2003); D'Ulisee-Cupo v. Bd. of Directors of Notre Dame High Sch., 202 Conn. 206, 213 (1987) (promissory estoppel serves as an alternative basis to enforce a contract).   For the reasons already discussed with respect to the breach of contract claim, the promissory estoppel claim is likewise time-barred.

### B.    Plaintiff's Promissory Estoppel Claim Fails as a Matter of Law

Even assuming the claim was not time-barred, the promissory estoppel claim is insufficient as a matter of law.  A promissory estoppel claim requires that "the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief and the other party must change its position in reliance on those facts." Connecticut Nat'l Bank v. Voog, 233 Conn. 352, 366 (1995).  However, "[i]t is fundamental that a person who claims an estoppel must show that he exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available

- 21 -

means of acquiring knowledge." Id. at 366.  Plaintiff cannot possibly claim that he "did not know the true state of things" that health psychology was a non-licensure specialization.  Moreover, there is no evidence that Plaintiff changed his position in reliance on any promise made by Walden.  Plaintiff's decision to pursue a degree in Health Psychology, which was expressly described as not intended to prepare graduates for state licensure, was his own conscious choice.  Therefore, summary judgment should enter on Count Five.

## VI.   PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS UNTIMELY AND INSUFFICIENT AS A MATTER OF LAW

### A.   Plaintiff's Breach of the Implied Covenant Claim is Time-Barred

Under Connecticut law, a three year statute of limitations applies to a claim of breach of the implied covenant of good faith and fair dealing.  See West Haven v. Commercial Union Ins. Co., 894 F.2d 540, 546 (2d Cir. 1990) ("We agree with the district court that a claim involving a duty of good faith and fair dealing sounds in tort, and is properly governed by Connecticut's three-year general tort statute of limitations," citing Conn. Gen. Stat. § 52-577) (internal citation omitted).  For reasons already discussed, any actions by Walden which could conceivably have constituted a breach of the implied covenant of good faith and fair dealing occurred in 1999 or before, when Plaintiff enrolled in non-licensure specializations.  Accordingly, as the claim was not brought within three years of the alleged breach, Count Six is time-barred.

B.     Plaintiff's Breach of the Implied Covenant Claim Fails as a Matter of Law

Even assuming the implied covenant of good faith claim was not time-barred, the claim is insufficient as a matter of law.  Under Connecticut law, contracts generally carry an implied covenant of good faith and fair dealing "requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. 231, 238 (1992).  Significantly, a claim for breach of the covenant of good faith and fair dealing can be made only where a contract exists between the parties. See Hoskins v. Titan Value Equities Group, Inc., 252 Conn. 789, 793 (2000).  As there is no evidence that the alleged contract between Walden and Plaintiff ever existed, this claim must be dismissed.  In addition, even assuming a contract did exist, Gupta, 239 Conn. at 591-93 and Faigel, 75 Conn. App. at 42-44 precludes the enforcement of promises in the educational context unless the promise was clear and specific.  By definition, the implied covenant of good faith and fair dealing is not a clear and specific contractual promise.  The undisputed evidence is that Walden did not breach any promise to Plaintiff or deny to Plaintiff the benefits of any actual agreement.  Accordingly, summary judgment is appropriate.

## CONCLUSION

In conclusion, for the foregoing reasons, summary judgment should enter in favor of Walden on all counts of the Complaint.

Dated: New York, New York
       May 15, 2009

PAUL, HASTINGS, JANOFSKY
& WALKER LLP

By:   /s/ Matthew R. Paul
      Matthew R. Paul (ct 21036)

      75 East 55th Street
      New York, NY 10022
      Tel: (212) 318-6000
      Fax: (212) 319-4090
      matthewpaul@paulhastings.com

      *Counsel for Defendant Walden*
      *University, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2009, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Matthew R. Paul
Matthew R. Paul (ct 21036)
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Tel: (212) 318-6000
Fax: (212) 319-4090
matthewpaul@paulhastings.com

LEGAL_US_E # 83617006.1