UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREG V. JOHNSON : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 3:08CV00045 (DJS) |
| : | |
| WALDEN UNIVERSITY, INC. : | |
|     Defendant. : | |

MEMORANDUM OF DECISION AND ORDER

The Plaintiff, Greg V. Johnson ("Johnson"), brings this diversity action against the Defendant, Walden University, Inc. ("Walden"), raising claims of fraudulent misrepresentation, negligent misrepresentation, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), breach of implied contract, promissory estoppel, and breach of implied covenant of good faith and fair dealing. Now pending before the court is Walden's motion to exclude the expert testimony of Brett Steinberg, Ph.D. For the reasons set forth below, the motion to exclude expert testimony (doc. # 24) is GRANTED.

BACKGROUND

Johnson's claims all relate to his allegations that representations made by and on behalf of Walden led Johnson to believe that he could become a practicing psychologist, i.e., a licensed psychologist engaged in the practice of psychology, by obtaining from Walden a doctorate degree in psychology with a specialization in health psychology (or sports psychology). After Johnson had received his doctorate in psychology from Walden, he was informed by an agent of the State of Connecticut that he would not be permitted to sit for Connecticut's psychology licensing examination because Walden lacked the necessary accreditation. Without a license to practice

psychology issued by the State of Connecticut, Johnson cannot practice psychology in Connecticut.

Johnson has disclosed Brett Steinberg, Ph.D. as an expert witness. In his written report, Dr. Steinberg expresses his opinions on the following "Walden program" issues: (1) whether Walden made false or misleading statements concerning its psychology program; (2) whether such statements could have been a contributing factor in Johnson's completing the Walden psychology program; and (3) whether Walden's psychology program met the academic standards of a legitimate Ph.D. program in psychology. Walden moves to exclude the testimony of Dr. Steinberg for the reasons that his opinions on these issues are irrelevant, no expert opinion is necessary on these issues, and testimony on these points would only waste time and confuse the issues.

Dr. Steinberg's report also offers his opinions on Johnson's lost income based upon his inability to practice as a psychologist in general and, more specifically, as a psychologist in private practice. Walden moves to exclude these opinions for the reasons that Dr. Steinberg is not qualified to provide an expert opinion on Johnson's earning potential as a practicing psychologist and that there is no proper factual basis for the opinion on lost income as a psychologist in private practice.

## STANDARD

Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or

>   to determine a fact in issue;
>   (b) the testimony is based on sufficient facts or data;
>   (c) the testimony is the product of reliable principles and methods; and
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

"District courts have a 'gatekeeping' role under Federal Rule of Evidence 702 and are charged with the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Lynch v. Trek Bicycle Corp.*, 374 F. App'x 204, 206 (2d Cir. 2010) (internal quotation marks omitted). "[I]n assessing admissibility, the trial court must determine whether the proffered expert testimony is relevant, i.e., whether it 'has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence,' Fed. R. Evid. 401 . . . ." *Campbell v. Metropolitan Property and Casualty Insurance Co.*, 239 F.3d 179, 184 (2d Cir. 2001). In order to satisfy the requirements of Rule 702, "the proffered testimony must 'fit' the factual dispute at issue - - in other words, it must be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *In re Rezulin Products Liability Litigation*, 441 F. Supp.2d 567, 576 (S.D.N.Y. 2006) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993)) .

Walden Program Issues

A qualified witness may testify as an expert only if his "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Walden argues that expert testimony is not needed as to the Walden program issues. Johnson, on the other hand, contends that Dr. Steinberg's testimony on the Walden program issues would

"provid[e] a complete picture of the program in which the Plaintiff was enrolled . . . [and] tend[] to prove the Defendant acted with bad intent in publishing the representations at issue (that completing the program would prepare the Plaintiff to practice psychology), because the testimony makes it more probable that such representations were known by the Defendant to be untrue." (Doc. # 30, p. 6.)

In considering the need for expert testimony on the Walden program issues, it is important to consider the essence of the parties' arguments as to the Walden program. Johnson alleges that Walden, through explicit statements made to him by his Walden faculty advisor, as well as representations contained in materials describing the Walden program, led him to believe he could become a practicing, i.e., a licensed, psychologist upon completion of the Walden psychology program with a specialization in health psychology. Walden, for its part, maintains that it did not represent to Johnson that he would be eligible to become a licensed psychologist by virtue of completing the Walden psychology program with a specialization in health psychology. Walden argues that the materials describing its psychology program reviewed by Johnson clearly indicated that neither the sports psychology specialization (in which Johnson was initially enrolled) nor the health psychology specialization (to which Johnson transferred after Walden discontinued its sports psychology specialization) was a specialization designed to prepare graduates for licensure as psychologists.

With regard to the question of whether Walden made or published false and/or misleading representations concerning its psychology program, Dr. Steinberg's report contains the following response:

> Yes. *Because Walden University's clinical, counseling, and school*

> *psychology doctoral programs are neither accredited* by the American
> Psychological Association *nor jointly designated* by the Association of
> State and Provincial Psychology Boards and the National Register of
> Health Service Providers in Psychology (a fact that Walden has openly
> acknowledged), *graduates may not sit for the national psychology
> licensure examination* unless special exceptions are granted, on a
> case-by-case basis, by the psychology licensing boards of most states.

(Doc. # 25-2, p. 2.) (emphasis added)  Dr. Steinberg's opinions as they relate to the Walden program issues are presented in terms of Walden's "clinical, counseling, and school psychology doctoral programs." The Psychology Student Handbook provided to Johnson when he enrolled at Walden identified seven professional specializations: clinical psychology, counseling psychology, health psychology, organizational psychology, school psychology, and sports psychology. According to the Handbook, "[c]linical, counseling, and school psychology are specializations designed to prepare graduates for licensure as a psychologist." (Doc. # 27-4, p. 18.) Johnson was never enrolled in any of those three psychology specializations at Walden. Since Dr. Steinberg's opinion as it relates to the Walden program issues is based on three psychology specializations in which Johnson was never enrolled, the Court finds that Dr. Steinberg's testimony would not be "'sufficiently tied to the facts of the case that it will aid the [factfinder] in resolving a factual dispute [relating to the Walden program issues].'" *In re. Rezulin Products Liability Litigation*, 441 F. Supp. 2d 567, 576 (S.D.N.Y. 2006) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993)).   Consequently, the Court grants Walden's motion to preclude as it pertains to the testimony and reports of Dr. Steinberg relating to the Walden program issues, i.e., Dr. Steinberg's responses to questions 1, 2, and 4 in his written report dated January 12, 2009. (Doc. # 25-2.)

Lost Income

Expert testimony must be presented by "a witness qualified as an expert by knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702. Walden contends that Dr. Steinberg is not qualified to offer expert testimony on Johnson's earning potential. Walden further contends that Dr. Steinberg's opinion as to Johnson's lost income based on his inability to practice as a psychologist in private practice lacks a proper factual basis. Johnson argues that Dr. Steinberg's "extensive and long-standing experience as a clinical psychologist" and "extensive and long-standing contacts within the psychological community" qualify him "to apply reliable data concerning the compensation earned by practicing psychologists to the facts of the case." (Doc. # 30, p. 11.)

"A witness's qualifications can only be determined by comparing the areas in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d 164, 172 (S.D.N.Y. 2009) (internal quotation marks omitted). The "subject matter of the witness's testimony" at issue is Johnson's earning potential as a practicing psychologist. Dr. Steinberg clearly has "superior skill, experience, or education" with respect to certain areas of the practice of psychology. Dr. Steinberg testified at his deposition that "the core strongest expertise that I have . . . would be as a forensic neuropsychologist, the diagnosis and treatment of emotional disorders and potential brain dysfunction in clinical patients . . . and applying that knowledge in both clinical settings and forensic contexts." (Doc. 25-4, p. 25 (Tr. p. 90).) He also testified, however, that he has no expertise in income tax issues, employee benefits, mathematics, economics, accounting, or present value calculations. (*Id.* at 26 (Tr. p. 95).) Dr. Steinberg's

opinions relating to lost income are based entirely on his review of the results of a survey of members' salaries conducted by the American Psychological Association ("APA") in 2007. Apart from "very informal[] and very sporadic[] . . . conversations with colleagues," Dr. Steinberg himself has never done any independent research or analysis into the salaries of psychologists. (*Id.* At 11 (Tr. p. 35).)

The Court recognizes that "[q]ualification as an expert is viewed liberally and may be based on a broad range of knowledge, skills, and training." *In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d at 172. However, "[t]he Rules [of Evidence] recognize that there is some limit to every expert's expertise and that he can not be allowed to go beyond it. For example, no medical doctor is automatically an expert in every medical issue merely because he or she has graduated from medical school or has achieved certification in a medical specialty." *O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1390 (C.D. Ill. 1992). The Court's acceptance of Dr. Steinberg as an expert qualified to testify on the issue of Johnson's lost income would be tantamount to a determination that any and every practicing psychologist who has read an APA salary survey is, solely on that basis, qualified to present expert testimony as to the lost income of someone who has been prevented from practicing psychology. The Court does not find such a sweeping determination to be consistent with its function of "ensur[ing] that the expert will actually be testifying on issues or subject matter[s] within his or her area of expertise." *Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), 2011 U.S. Dist. LEXIS 47416, at *8 (S.D.N.Y. April 29, 2011) (internal quotation marks omitted).

Even if the Court found Dr. Steinberg qualified as an expert on the issue of lost income, the question would remain as to "whether the proffered testimony has a sufficiently

'reliable foundation' to permit it to be considered." *Campbell v. Metropolitan Property & Casualty Insurance Co.*, 239 F.3d 179, 184 (2d Cir. 2001) (quoting *Daubert*, 509 U.S. at 597). While the inquiry into the reliability of expert testimony is a flexible one, "the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002).

As mentioned above, Dr. Steinberg's opinion as to lost income is based entirely on his review of a 2007 APA salary survey. At his deposition, Dr. Steinberg testified that he didn't know who had authored the survey, had no way of verifying that the report is accurately reflecting the information collected by the APA, and didn't respond to the survey himself. In his brief opposing Walden's motion to exclude, Johnson argues that the APA survey data is "methodical and highly reliable . . ." (Doc. # 30, p. 12.) In support of that argument, Johnson represents that Dr. Steinberg testified at his deposition that "[b]ecause the American Psychological Association is the organization for practicing psychologists . . . the vast majority of [practicing psychologists] are members of the APA." In fact, Dr. Steinberg testified at his deposition that "I don't have any specific numerical percentage [of psychologists in the United States who are members of the APA] . . . . Because the American Psychological Association is the organization for practicing psychologists, *I would assume* that the vast majority of people are members of the APA." (Doc. # 25-4, p. 10 (Tr. pp. 32-33)) (emphasis added). It appears from the Introduction section of the 2007 APA salary survey that approximately 52,000 individuals "were eligible for inclusion in the study," (doc. # 25-6, p. 4), and approximately 13,000 individuals "responded to the survey either through the web or the paper version." (*Id.*) Johnson

has not established that "the proffered testimony has a sufficiently reliable foundation to permit it to be considered." *Campbell*, 239 F.3d at 184 (internal quotation marks omitted). On the basis of the evidence before it, the Court finds "that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"The party seeking to rely on expert testimony bears the burden of establishing, by a preponderance of the evidence, that all requirements have been met." *Arista Records*, 2011 U.S. Dist. LEXIS 47416, at *6 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 n.10). The Court concludes that in addition to not establishing that Dr. Steinberg is qualified to testify on the issue of lost income, Johnson has also not met his burden of establishing the reliability of the testimony proffered on that issue.

## CONCLUSION

For the foregoing reasons, Walden's motion to preclude the expert testimony of Brett Steinberg, Ph.D. (**doc. # 24**) is **GRANTED**.

**SO ORDERED** this 8th day of June, 2012.

_____/s/ DJS_____
                DOMINIC   J.   SQUATRITO
             UNITED STATES DISTRICT JUDGE